**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SALIM AHMED HAMDAN,                    :
                                       :
          Plaintiff,                   :
                                       :
     v.                                : Civil Action No. 04-1519 (JR)
                                       :
ROBERT GATES,                          :
                                       :
          Defendant.                   :


**MEMORANDUM ORDER**


          Salim Ahmed Hamdan seeks a preliminary injunction that
would stop his trial by military commission pending federal court
review of the Military Commission's determination that he is an
unlawful enemy combatant and of his claims that the trial will
violate the Constitution and the Geneva Conventions.


**I. Background**

A. Procedural History

          Hamdan is a Yemeni national.  He was captured by
militia forces in Afghanistan in November 2001 and turned over to
the United States military.  Since June 2002, he has been held at
the Defense Department's detention facility at Guantanamo Bay.
One year into his detention at Guantanamo, in July 2003, the
President declared him eligible for trial by military commission
on unspecified charges.  In April 2004, Hamdan filed a petition
for mandamus or habeas corpus in the United States District Court

for the Western District of Washington.  On July 13, 2004, two years and eight months into his detention, Hamdan was formally charged with single count of conspiracy "to commit . . . offenses triable by military commission."  In August 2004, his habeas petition was transferred to the District of Columbia and randomly assigned to me.

Around the same time, in July 2004, in compliance with the Supreme Court's decision in Hamdi v. Rumsfeld, 542 U.S. 507 (2004), the Deputy Secretary of Defense established Combatant Status Review Tribunals (CSRTs) to determine whether detainees at Guantanamo are "enemy combatants."  Hamdan was classified as a enemy combatant by a CSRT on October 2, 2004, and designated for trial before a military commission.

On November 8, 2004, I granted Hamdan's habeas petition.  Hamdan v. Rumsfeld, 344 F. Supp. 2d 152 (D.D.C. 2004).[1]  The Supreme Court generally sustained my decision,[2] holding that Hamdan could not be lawfully tried by a military tribunal convened only by executive order and that the structure and procedures of the military commission then in place violated both the Uniform Code of Military Justice and the Geneva

---

[1] Contrary to the government's insistence that habeas is solely concerned with release, Opp. Memo. at 16-17, this grant of a petition for habeas corpus did not involve Hamdan's release.

[2] The Court ignored my conclusion that Hamdan should be put before a tribunal that would determine whether he was a prisoner of war.

Conventions.  <u>Hamdan v. Rumsfeld</u>, 126 S. Ct. 2749, 2759 (2006).
Four justices, in a plurality opinion, also concluded that the
only offense Hamdan was then charged with – conspiracy – was not
a violation of the law of war and thus not triable by military
commission.  <u>Id.</u> at 2780.

Four justices (not the same four) noted in <u>Hamdan</u> that
"[n]othing prevents the President from returning to Congress to
seek the authority he believes necessary" in order lawfully to
try enemy combatants before a military tribunal.  <u>Id.</u> at 2799.
The President accepted that invitation and, in October 2006,
Congress enacted the Military Commissions Act, Pub. L. No.
109-366, 120 Stat. 2600.  In Section 3(a)(1) of that Act,
codified at 10 U.S.C. § 948d(a), Congress gave military
commissions jurisdiction to try "alien unlawful enemy
combatant[s]."

Under the Act, a military commission is made up of at
least five officers, 10 U.S.C. §§ 948i, 948m, and is presided
over by a military judge, 10 U.S.C. § 948j.  Many of the
procedures for an MCA commission parallel those that had been
established by the President's order.  Before and after passage
of the MCA, the applicable rules have required that the defendant
be represented by appointed military counsel and have the ability
to retain private counsel (as Hamdan has), that he be informed of
the charges against him, that he be presumed innocent until

proven guilty beyond a reasonable doubt, that he receive (with important qualifications) the evidence that the prosecution intends to produce at trial and any known exculpatory evidence, that he not be required to testify at trial, and that he be allowed to present evidence and cross-examine witnesses.  32 C.F.R. §§ 9.3 - 9.6; 10 U.S.C. §§ 948k, 949a, 949c, & 949l.

The procedures codified by the MCA also include significant improvements.  Previously, the accused could be excluded from the proceedings, and evidence admitted against him without his knowledge.  32 C.F.R. §§ 9.6(b)(3), (d)(5).  The MCA repairs that problem by requiring the presence of the defendant unless, after being warned, he persists in conduct that justifies his exclusion in order to protect the safety of others or to avoid disrupting the proceedings.  10 U.S.C. §§ 949d(b), (e).  While the MCA adopts fairly permissive standards allowing for the use of hearsay and requires the party opposing admission to prove unreliability, whenever the government intends to use hearsay, it must notify the defendant "sufficiently in advance to provide the adverse party with a fair opportunity to meet the evidence" and must explain "the particulars of the evidence (including information on the general circumstances under which the evidence was obtained)."  10 U.S.C. § 949a(b)(2)(E)(ii).

The curtailment of confrontation rights through the broad allowance of hearsay is one of a number of ways in which

MCA commissions depart from standards that would be applied in either U.S. criminal trials or courts-martial.  Another departure, and a startling one, is that under 10 U.S.C. § 948r(c), evidence obtained by "coercion" may be used against the defendant so long as the military judge decides that its admission is in the interest of justice and that it has "sufficient" probative value.  Compare Chambers v. Florida, 309 U.S. 227 (1940) (reversing conviction and excluding evidence obtained through five days of coercive interrogation).

That said, one of the most substantial improvements under the MCA is in the structure for review of convictions. Before the MCA, the President himself, or the Secretary of Defense acting at his direction, was vested with final reviewing authority.  There was no provision for independent review outside the military's chain of command.  Under the MCA, defendants convicted by military commission are afforded three levels of appellate review.  A defendant may first appeal his conviction to a Court of Military Commission Review (CMCR), comprised of at least three military judges or civilians with "comparable qualifications" appointed by the Secretary of Defense.  10 U.S.C. § 950f.  After exhausting (or waiving) proceedings before the CMCR, the defendant has an appeal of right to the D.C. Circuit, which has "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission."  10 U.S.C.

§ 950g.  The Court of Appeals has jurisdiction to review all "matters of law" in order to consider "whether the final decision was consistent with the standards and procedures specified" in the MCA and with "the Constitution and laws of the United States."  10 U.S.C. §§ 950g(a)-(c).  Finally, 10 U.S.C. § 950g(d) provides that the Supreme Court may review the final judgment of the Court of Appeals on a writ of *certiorari*, in accordance with 28 U.S.C. § 1257.

Except for its provision "channeling" appellate review of final judgments to the D.C. Circuit, the MCA was clearly designed to keep enemy combatants away from the federal courts: section 7 of the MCA unambiguously stripped Article III courts of their jurisdiction to consider habeas petitions filed by enemy combatants.  It was in compliance with Section 7 that I dismissed Hamdan's petition for habeas corpus on December 13, 2006: Congress had stripped federal courts of their statutory habeas jurisdiction, and I thought that precedent required that I refuse a "constitutional" writ of habeas corpus to an alien detained at Guantanamo Bay.  Hamdan v. Rumsfeld, 464 F. Supp. 2d 9 (D.D.C. 2006).  That belief turned out to be incorrect.  The Supreme Court, in Boumediene v. Bush, 128 S. Ct. 2229 (2008), decided last month that Section 7 was unconstitutional.  The Court held that the Suspension Clause, Art. I, § 9, cl. 2 of the Constitution, "has full effect at Guantanamo Bay," and that the

<u>Boumediene</u> petitioners "are entitled to the privilege of habeas corpus to challenge the legality of their detention."  <u>Id.</u> at 2262.

While these developments were moving forward in Congress and the courts, Hamdan's military commission moved forward, as well, although not without difficulty.  On April 5, 2007, the Convening Authority authorized two new charges against Hamdan, both of which had recently been "codified" under the MCA. Charge I was, and is, for conspiracy in violation of 10 U.S.C. § 950v(b)(28); Charge II is for providing material support for terrorism in violation of 10 U.S.C. § 950v(b)(25).  On June 4, 2007, the military judge presiding over Hamdan's Commission dismissed those charges, for lack of jurisdiction, because Hamdan had been classified by CSRT only as an "enemy combatant" and not as an "<u>unlawful</u> enemy combatant."  The government moved for reconsideration and for the military judge to hear evidence and decide for himself whether Hamdan was lawfully triable under the MCA.  The motion was granted and, as a result of hearings held on December 5 and 6, 2007, the military judge issued an opinion finding Hamdan to be an unlawful enemy combatant.  In that same opinion, issued on December 19, 2007, the judge also rejected a number of constitutional arguments – Hamdan's *ex post facto*, bill of attainder and equal protection challenges – relying on the D.C. Circuit's now-vacated opinion in <u>Boumediene v. Bush</u>, 476

F.3d 981 (D.C. Cir. 2007), which had held that detainees at
Guantanamo have no cognizable constitutional rights.  Id. at 992.

Hamdan's trial by military commission is scheduled to
begin on July 21, 2008.


B. Hamdan's Motion for Preliminary Injunctive Relief

Hamdan argues that the Commission lacks personal
jurisdiction over him and lacks subject matter jurisdiction over
the crimes for which he has been charged.

As to personal jurisdiction, Hamdan begins with the
unassailable fact that the MCA limits trial by military
commission to those who have been determined to be unlawful enemy
combatants.  Although he was so classified by the Commission in
December 2007, Hamdan argues that the Commission may not proceed
against him based on a status determination that has not been
reviewed by a federal court.  Under Hamdan's reading of
Boumediene, detainees' now-recognized constitutional right to
challenge the legality of their detention in habeas means that
trial by military commission cannot proceed before there has been
a full habeas hearing in federal court to test a finding of
unlawful enemy combatancy, whether made by a CSRT or by a
military commission.

As to subject matter jurisdiction, Hamdan argues that
the Commission lacks power to proceed because the charges filed

against him violate the Constitution's *ex post facto*, define and punish, and bill of attainder clauses.  He also asserts that the MCA violates the equal protection component of Fifth Amendment due process by subjecting only aliens to trial by military commission, and that the Commission's potential allowance of certain kinds of hearsay evidence and evidence obtained through coercion will violate his Geneva Convention and due process rights.

The government argues that as a result of a provision in Section 3(a)(1) of the Military Commissions Act, codified at 10 U.S.C. § 950j(b), this Court lacks jurisdiction to decide Hamdan's claims and that, even if jurisdiction does exist, "the comity-based abstention doctrine recognized in [Schlesinger v. Councilman, 420 U.S. 738 (1975)] . . . require[s] this Court to stay its hand until the completion of the military commission process."  Opp. Memo. at 9.  Aside from any claims based on the Geneva Conventions, the government stresses that each claim that Hamdan has raised is "fully cognizable on direct review [by the D.C. Circuit] if he is convicted by military commission."[3]  Id. at 22.

---

[3] The MCA purports to bar defendants from asserting defenses or invoking rights based on the Geneva Conventions. See 10 U.S.C. § 948b(g). Should Hamdan be convicted, nothing in the MCA bars him from asserting on appeal, as he does in this motion, that § 948b(g) violates the Supremacy Clause and the separation of powers. See United States v. Klein, 80 U.S. 128 (1872).

## II. Analysis

A. It is not necessary to decide Hamdan's claim that Section 3(a)(1) of the MCA is an unconstitutional suspension of habeas corpus.

> Except as otherwise provided in this chapter
> and notwithstanding any other provision of
> law (including section 2241 of title 28 or any
> other habeas corpus provision), no court,
> justice, or judge shall have jurisdiction to
> hear or consider any claim or cause of action
> whatsoever, including any action pending on or
> filed after the date of the enactment of the
> Military Commissions Act of 2006, relating to
> the prosecution, trial, or judgment of a
> military commission under this chapter,
> including challenges to the lawfulness of
> procedures of military commissions under this
> chapter.

10 U.S.C. § 950j(b).  Hamdan insists that this provision does not bar challenges to the Commission's jurisdiction, even though on its face it is plainly a jurisdiction-stripping provision.[4] Instead, he argues, it "merely codifies, in the context of the MCA, the prudential rule that civilian courts lack supervisory jurisdiction over military tribunals."  Pet.'s Memo. at 14. Hamdan's strained reading of § 950j(b) cannot be squared with the language that withdraws jurisdiction over "any claim or cause of action whatsoever . . . relating to prosecution, trial or judgment of a military commission," and it ignores the context of the provision within the MCA, which was intended to deprive the federal courts of all habeas jurisdiction over Guantanamo.

---

     [4]  The government euphemistically calls this section a "review channeling provision."

Hamdan next argues that, if and to the extent that § 950j(b) does strip this Court of jurisdiction, either to challenge the MCA tribunal's jurisdiction or to deal with his other constitutional claims about the Commission, it "violate[s] the Suspension Clause by precluding access to the Great Writ without providing an adequate, alternative remedy." Pet.'s Memo. at 15.

That argument presents important constitutional questions that I need not, and therefore will not, attempt to answer.  "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105 (1944).  The Supreme Court did not abstain from the Suspension Clause issue in Boumediene, but the Supreme Court is the Supreme Court.  Moreover, the context in which the issue is presented here is quite different.

First, the application of habeas corpus that Hamdan wishes to advance here is different from the one recognized in Boumediene.  Boumediene dealt with a challenge to detention. Hamdan insists in his reply brief that he also challenges his detention, but the gist of the challenge presented in this motion for preliminary injunction is to the jurisdiction of the Military Commission, an issue farther removed from the "historical core"

of the Writ than was the case in <u>Boumediene</u>.   See <u>INS v. St. Cyr</u>,
533 U.S. 289, 301 (2001)("At its historical core, the writ of
habeas corpus has served as a means of reviewing the legality of
executive detention, <u>and it is in that context that its</u>
<u>protections have been strongest</u>.") (emphasis added).

        Second, unlike the petitioners in <u>Boumediene</u>, Hamdan
has had a CSRT <u>and</u> a two-day jurisdictional hearing before the
Commission, at which he was represented by counsel, and will now
have a fully adversarial trial that will provide a further test
of the premise of his detention.   As Justice Kennedy observed in
<u>Boumediene</u>, "habeas corpus review may be more circumscribed if
the underlying detention proceedings are more thorough than they
were here."   128 S. Ct. at 2270.   The <u>Boumediene</u> petitioners'
right to immediate habeas hearings was tied to the fact that
"there has been no trial by a military commission for violations
of the laws of war" nor had there been "a rigorous adversarial
process to test the legality of their detention."   <u>Id.</u> at 2259-
60.

        Unlike the detainees in <u>Boumediene</u>, Hamdan has been
informed of the charges against him and guaranteed the assistance
of counsel.   He has been afforded discovery.   He will be able to
call and cross-examine witnesses, to challenge the use of
hearsay, and to introduce his own exculpatory evidence.   He is
entitled to the presumption of innocence.   And, most importantly,

if Hamdan is convicted, he will be able to raise each of his legal arguments before the D.C. Circuit, and, potentially, the Supreme Court.

The question of whether section § 950j(b) violates the Suspension Clause is both novel and complex.  It is by no means controlled by the four corners of <u>Boumediene</u>.  What must be considered is "whether there are suitable alternative processes in place to protect against the arbitrary exercise of government power."  <u>Id.</u> at 2275.  "What matters is the sum total of procedural protections afforded to the detainee at all stages, direct and collateral."  <u>Id.</u> at 2269.

As an example of the complexity of the question presented by Hamdan's Suspension Clause challenge, and the inadvisability of attempting to decide it now, consider that a traditional function of a habeas court is to "allow[] prisoners to introduce exculpatory evidence that was either unknown or previously unavailable to the prisoner" at the time that the Executive made the decision to detain.  <u>Id.</u> at 2267.  Because the MCA provides that the D.C. Circuit's jurisdiction on direct review is limited to "matters of law," it appears that the Court of Appeals would be barred from considering a claim of innocence based on previously unavailable evidence.  Whether the constitution entitles Hamdan to raise such a claim collaterally, in habeas, is an entirely speculative question at this point,

first, because such claims may not actually arise, and, second, because the question cannot be answered without accessing how much procedure Hamdan did, in fact, actually receive.  Compare Boumediene, 128 S. Ct. at 2272 ("an opportunity for the detainee to present relevant exculpatory evidence that was not made part of the record in the earlier proceedings" is "constitutionally required in this context" where "the underlying detention proceeding lack[s] the necessary adversarial character") with In re Yamashita, 327 U.S. 1, 8 (1946) ("[O]n application for habeas corpus we are not concerned with the guilt or innocence of the petitioners.  We consider here only the lawful power of the commission to try the petitioner for the offense charged.").


B. Abstention is appropriate – or required – as to the merits of Hamdan's claims.

        Hamdan's focus now is not on post-trial habeas, of course. What he seeks is pre-trial relief to avoid being subjected to a trial that, in his submission, will be unlawful. His claims of unlawfulness, however, are all claims that should or must be decided in the first instance by the Military Commission, and then raised before the D.C. Circuit, as necessary, on appeal.  The Supreme Court's decision in Councilman requires federal courts to give "due respect to the autonomous military judicial system created by Congress."  New v. Cohen, 129 F.3d 639, 643 (D.C. Cir. 1997).  Councilman involved court-

martial proceedings against a U.S. service member, to be sure, and not a military commission, but its central rationale is applicable here.  <u>Councilman</u> requires the courts to respect the balance that Congress has struck in creating a military justice system, "a critical element of which is the Court of Military Appeals consisting of civilian judges completely removed from all military influence or persuasion."  420 U.S. at 758. Considerations of comity were inapplicable when Hamdan's petition was first before me in 2004 because, as I said then, "whatever can be said about the Military Commission established under the President's Military Order, it is not autonomous, and it was not created by Congress."  <u>Hamdan</u>, 344 F. Supp. 2d at 157.  With the enactment of the MCA, that is no longer the case: "Hamdan is to face a military commission . . . designed . . . by a Congress that . . . act[ed] according to guidelines laid down by the Supreme Court."  <u>Hamdan</u>, 464 F. Supp. 2d at 18.  Additionally, because the MCA gives Hamdan an appeal of right to an Article III court, direct review will be even more "removed from all military influence or persuasion" than in <u>Councilman</u>.

The long-standing exception to <u>Councilman</u> abstention is that defendants may raise, pre-trial, "substantial arguments that a military tribunal lacks personal jurisdiction over them," <u>Hamdan</u>, 126 S. Ct. at 2772 n.20, but I find no "substantial argument" about jurisdiction in this case.  Hamdan urges that the

military judge "made a finding of unlawful enemy combatancy in December 2007 based on a misapplication of <u>relevant law</u>," by failing to address the merits of his constitutional arguments, by misapplying the Geneva Conventions, and by denying him the ability to call certain exculpatory witnesses.  <u>Pet.'s Memo.</u> at 24.  But Hamdan's summary assertion of these claims does not automatically make his jurisdictional challenge a substantial one.  Hamdan does not explain how the applicable jurisdictional standards contained in 10 U.S.C. § 948a(1) were violated by the military judge's application of law to the facts adduced at the December 2007 jurisdictional hearing.  The absence of a full-scale habeas hearing as to Hamdan's classification as an unlawful enemy combatant does not, by itself, raise a substantial question about the Commission's jurisdiction to proceed.  Moreover, under the D.C. Circuit's recent decision in <u>Khadr v. United States</u>, No. 07-1405, 2008 U.S. App. LEXIS 13285 (June 20, 2008), all of Hamdan's jurisdictional arguments can be addressed, if necessary, following final judgment in accordance with § 950g.  Where both Congress and the President have expressly decided when Article III review is to occur, the courts should be wary of disturbing their judgment.

## **Conclusion**

I find that Hamdan's chances of prevailing on the merits of his prayer for injunctive relief are uncertain; that he has shown no public interest reason for an injunction, see Khadr, 2008 U.S. App. LEXIS at *15; that the disruption that would be caused by a last-minute delay of his trial would be significant; and that the irreparable injuries he asserts do not outweigh the other preliminary injunction factors.

The eyes of the world are on Guantanamo Bay.  Justice must be done there, and must be seen to be done there, fairly and impartially.  But Article III judges do not have a monopoly on justice, or on constitutional learning.  A real judge is presiding over the pretrial proceedings in Hamdan's case and will preside over the trial.  He will have difficult decisions to make, as judges do in nearly all trials.  The questions of whether Hamdan is being tried *ex post facto* for new offenses, whether and for what purposes coerced testimony will be received in evidence, and whether and for what purpose hearsay evidence will be received, are of particular sensitivity.  If the Military Commission judge gets it wrong, his error may be corrected by the CMCR.  If the CMCR gets it wrong, it may be corrected by the D.C. Circuit.  And if the D.C. Circuit gets it wrong, the Supreme Court may grant a writ of *certiorari*.

The motion for preliminary injunction, [Dkt. # 92], is

**denied.**


                              JAMES ROBERTSON
                        United States District Judge